IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VICTOR HERNANDEZ, ET AL., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | No. 3:13-cv-2164-O-BN |
| | § | |
| U.S. BANK, N.A., ET AL., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This action has been referred to the undersigned magistrate judge for pretrial

management pursuant to 28 U.S.C. § 636(b) and a standing order of reference. *See* Dkt.

No. 5. For the reasons explained below, Defendants Bank of America, N.A.'s ("BOA")

and U.S. Bank, N.A.'s ("U.S. Bank" and, with BOA, collectively the "Moving

Defendants") Motion for Summary Judgment [Dkt. No. 34] should be granted in part

and denied in part.

**Procedural Background**

This is an action involving foreclosure of real property (the "Property") by

Plaintiffs, citizens of Texas, against Defendants U.S. Bank, a national banking

association with a principal place of business in Ohio; BOA, a national banking

association with a principal place of business in North Carolina; and American Homes

4 Rent Properties Two, LLC ("American Homes"), a foreign limited liability company

with a principal place of business in California. *See* Dkt. No. 19-1 at ¶¶ 1-4. Plaintiffs'

Original Petition asserted claims for: (1) violations of the Real Estate Settlement

Procedures Act ("RESPA"); (2) violations of the Texas Property Code; (3) breach of

contract and waiver; (4) unjust enrichment; (5) negligence; (6) violations of the Texas

Debt Collection Act ("TDCA")[1]; (7) negligent misrepresentation; and (8) common law

fraud. Plaintiffs also seek as remedies: (1) a declaratory judgment; (2) an accounting;

(3) suit to quiet title; and (4) trespass to title. The Moving Defendants timely removed

the case to federal court on the bases of federal question jurisdiction and diversity

jurisdiction. *See* Dkt. No. 1.

The Moving Defendants then filed a Motion to Dismiss. *See* Dkt. No. 6. Plaintiffs

filed a Response opposing the Motion to Dismiss, *see* Dkt. No. 16, and the Moving

Defendants filed a Reply, *see* Dkt. No. 18. Plaintiffs subsequently filed their Motion for

Leave, *see* Dkt. No. 19, to which the Moving Defendants filed a Response in opposition,

*see* Dkt. No. 21, and Plaintiffs then filed a Reply, *see* Dkt. No. 22.

The undersigned issued a Findings, Conclusions and Recommendation ("FCR")

[Dkt. No. 23] recommending that the Motion to Dismiss [Dkt. No. 6] be granted in part

and denied in part, which was accepted by District Judge Reed O'Connor. *See* Dkt. No.

27 (the "Order Accepting the FCR"). Specifically, the Order Accepting the FCR

dismissed with prejudice Plaintiffs' claims regarding (1) violations of the RESPA; (2)

breach of contract based on Defendants' alleged waiver; (3) unjust enrichment; (4)

negligence; (5) negligent misrepresentation; (6) violations of the TDCA; (7) suit to quiet

---

[1] Although Plaintiffs allege violations of the "Texas Debt Collection Practices Act," the statutes cited by Plaintiffs refer to the TDCA.

title; and (8) trespass to try title. *See id.* As to these claims, the Plaintiffs' Motion for Leave [Dkt. No. 19] was denied. *See id.*

Additionally, the Order Accepting the FCR denied Defendants' Motion to Dismiss as to Plaintiffs' claims regarding (1) violations of the Texas Property Code; (2) breach of contract based on Defendant's failure to give notice; and (3) common law fraud. *See id.* As to these claims, the Plaintiffs' Motion to Leave was granted. *See id.* The Motion to Dismiss was also denied as to Plaintiffs' requested remedies of (1) declaratory judgment; and (2) an accounting. *See id.*

Plaintiffs then filed an Amended Complaint, *see* Dkt. No. 25, and the Moving Defendants filed an Answer, *see* Dkt. No. 26. The Moving Defendants filed a Motion for Summary Judgment. *See* Dkt. No. 34. Plaintiffs filed a Response in opposition, *see* Dkt. No. 36, and the Moving Defendants filed a Reply, *see* Dkt. No. 40.

## Objection to Summary Judgment Evidence

The Moving Defendants object to Plaintiffs' Exhibit of Certified Copies of Declarations from *In re Bank of America Home Affordable Modification Program (HAMP) Contract Litigation*, Case No. 1:10-md-2193 (D. Mass.) because it is conclusory and irrelevant. *See* Dkt. No. 40 at ¶ 3. The Moving Defendants assert that "[d]eclarations from an unrelated lawsuit, and regarding loans having nothing to do with the Plaintiffs' case, are inadmissible as summary judgment evidence to support contentions Plaintiffs *may* be attempting to assert in this suit, and thus, must be stricken." *Id.*

When asked about this evidence at oral argument, Plaintiffs claimed generally that the evidence was supportive of Plaintiffs' common law fraud claim and, more specifically, that the evidence would be used to show exemplary damages. But the Plaintiffs' Exhibit of Certified Copies of Declarations is not germane to the issues on summary judgment regarding the common law fraud claim, and the Moving Defendants have not made any summary judgment arguments specifically targeting Plaintiffs' seeking exemplary damages. Accordingly, the Court need not consider Plaintiffs' Exhibit of Certified Copies of Declarations.

## Factual Background and Allegations

The summary judgment evidence – when all facts are viewed and all reasonable inferences are drawn in the light most favorable to Plaintiffs and when all disputed factual controversies are resolved in Plaintiffs' favor as the nonmoving party – shows the following for purposes of resolving Defendant's Motion for Summary Judgment [Dkt. No. 34].

Plaintiffs Victor Hernandez, Maria Graciela Hernandez, and Gabriela Hernandez purchased a home in Grand Prairie, Texas on January 27, 2006. *See* Dkt. No. 44 at 3. To finance the purchase, Plaintiffs executed an Adjustable Rate Note and a Deed of Trust. *See* Dkt. No. 34-4 at App. 20-22; Dkt. No. 44 at 3. Initially, the beneficiary under the Deed of Trust was Mortgage Electronic Registration Systems, Inc. ("MERS"), *see* Dkt. No. 34 at 2; Dkt. No. 44 at 3, but the Deed of Trust was thereafter assigned to Defendant U.S. Bank on January 29, 2007, *see* Dkt. No. 44 at 3. BAC Home Loans Servicing, LP was the loan servicer for U.S. Bank. *See id.*

-4-

Between 2007 and 2008, Plaintiffs started to fall behind on their payments. *See id.* Thereafter, Plaintiffs proceeded to contact Defendants to advise them of the situation and were transferred to a representative named Scott in the HOPE Department for assistance with their loan. *See id.* Scott told Plaintiffs that they qualified for an assistance program and instructed them to send copies of their pay stubs, bank statements, and a hardship letter. *See id.*

Plaintiffs faxed the requested information on April 24, 2008 and called back two days later to verify the information was received. *See id.* Speaking with a different representative named Melanie, Plaintiffs were told that the requested paperwork had not been received, and so Plaintiffs resubmitted the requested documents on April 28, 2008. *See id.* On May 1, 2008, Plaintiffs again contacted Defendants to verify receipt of the requested documents and were told that the documents had been received and that their loan was under review and that a representative would contact them for further assistance. *See id.* at 3-4.

In June, 2008, Plaintiffs received a Making Homes Affordable packet, which they filled out and returned to Defendants. *See id.* at 4. Around this time, Plaintiffs also received a foreclosure sale notice for June 3, 2008. *See id.* After receiving the foreclosure sale notice, Plaintiffs called BOA and were directed to Lillian, a representative in the foreclosure department, who told them that she would request a postponement of the foreclosure sale because the Plaintiffs' loan was under review for modification. *See id.*

Plaintiffs allege that no one in the foreclosure department had yet been assigned

to their case around this time; but, once a representative was assigned to their case, Plaintiffs were told that they pre-qualified for a loan modification, but they first needed to send in the requested financial information, which the Plaintiffs submitted. *See id.*

Also at this time, Plaintiffs received documents from Recontrust stating that the Property was in foreclosure and scheduled to be sold on July 1, 2008. *See id.* Plaintiffs thereafter contacted Defendants to inquire about the foreclosure sale. *See id.* The case manager instructed Plaintiffs that the only way to stop foreclosure was to pay $10,000.00, which would cover past payments, the next three monthly payments, and loan modification costs and would bring the loan current. *See id.*

On July 1, 2008, the Property was sold at a foreclosure sale to U.S. Bank. *See* Dkt. No. 38-1 at App. 27-29. On August 8, 2008, Plaintiffs paid Defendants the requested $10,000.00, *see* Dkt. No. 38-3 at App. 49-50, and were told by a representative that the Property was no longer in foreclosure and that their loan was under review. *See* Dkt. No.44 at 4.

Between October and December 2008, Plaintiffs received numerous letters from BOA stating that Plaintiffs' account was under review. *See id.* at 5.

In January 2009, Plaintiffs received another Making Homes Affordable packet, and, despite their confusion, Plaintiffs submitted the requested documents again. *See id.* Thereafter, Plaintiffs contacted Defendants and were told they could not make any payments until it was determined if Plaintiffs qualified for the loan modification, and so Plaintiffs stopped making payments. *See id.*

In December 2009, Plaintiffs received a letter from BOA stating that they were

not eligible for the Home Affordable Modification Program. *See id.* Plaintiffs contacted BOA to determine why they were rejected and were told by a representative named Lizette that Defendants never received any documents and the application was denied for that reason. *See id.* at 5-6. Plaintiffs then informed Lizette that they had submitted the requested documents, providing specific dates of delivery. *See id.* at 6.

On June 4, 2010, Recontrust Company filed a Rescission of Substitute Trustee's Sale and Cancellation of Substitute Trustee's Deed, which rescinded the July 1, 2008 foreclosure sale to U.S. Bank. *See* Dkt. No. 38-1 at App. 30-31. Around this time, Plaintiffs received their credit scores and learned that the Property was no longer in their name. *See* Dkt. No. 44 at 6. The record is unclear as to when the Plaintiffs learned that the July 2008 foreclosure sale had been rescinded and that the Property had been put back in Plaintiffs' name.

In October 2011, Plaintiffs received a foreclosure sale notice from Recontrust for November 1, 2011. *See id.* at 7. Plaintiffs then contacted BOA and were told by a customer service representative named Ruben Morales that there was no sale date. *See id.* Plaintiffs were then transferred to the foreclosure department, and a representative told them that, if their loan was under review, BOA could not sell the home and instructed Plaintiffs to disregard the foreclosure sale notice. *See id.*

Around November 22, 2011, Plaintiffs received a letter from BOA thanking Plaintiffs for making a payment but informing Plaintiffs that only the total amount to bring the account current – which amounted to $47,190.42 – would be accepted, citing a notice letter dated November 2, 2011. *See id.* at 7-8. Plaintiffs deny making this

payment and receiving the November 2 letter. *See id.* at 7.

From September 2012 to February 2013, Plaintiffs loan was assigned to Shannon Stafford. *See id.* at 8. Ms. Stafford told Plaintiffs that their loan was under review and requested Plaintiffs' financial information. *See id.* In December 2012, Plaintiffs faxed the requested information, but, in January 2013, after Plaintiffs received foreclosure letters from attorneys, Plaintiffs were told by Ms. Stafford that the Property was posted for foreclosure because she had only received part of the information requested. *See id.* at 8-9.

On February 5, 2013, the Property was sold to American Homes 4 Rent Properties Two, LLC. *See* Dkt. No. 34-10 at App. 40-41; Dkt. No. 38-1 at App. 35-37.

## Legal Standards

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the

nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Id.*; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

The Court is required to view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if both parties have introduced evidence showing that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment,"*Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075. Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

If, "after the nonmovant has been given an opportunity to raise a genuine factual issue," "the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005); *Steadman v. Texas Rangers*, 179 F.3d 360, 366 (5th Cir. 1999). The Court will not assume "in the absence of any proof ... that the

nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

While the Local Rules in this district do not require the parties to submit statements or counter-statements of undisputed facts, where the Defendant cites a fact that Plaintiffs do not controvert with evidence, the Court may accept it as true. *See Eversley v. MBank of Dallas*, 843 F.2d 172, 174 (5th Cir. 1988); *Bradley v. Chevron U.S.A., Inc.*, No. 2:04-cv-92-J, 2004 WL 2847463, at *1 n.2 (N.D. Tex. Dec. 10, 2004).

## Analysis

I.   <u>Summary judgment should be denied on Plaintiffs' TPC claim.</u>

Plaintiffs assert violations of Section 51.002(d) of the Texas Property Code, claiming that Defendants failed to provide Plaintiffs with written notice of default and the right to cure. *See* Dkt. No. 19-1 at ¶ 39-40. Texas Property Code § 51.002(d) provides:

> Notwithstanding any agreement to the contrary, the mortgage servicer of the loan debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with

written notice by certified mail stating that the debtor is in default under the deed of trust or other contract or lien and giving the debtor at least 20 days to cure the default before notice of sale can be given.

TEX. PROP. CODE ANN. § 51.002(d).

The Moving Defendants argue that "Plaintiffs received notice of Default in October 2008, and Defendants subsequently properly noticed and conducted the foreclosure sale," Dkt. No. 34 at ¶ 19, and attached a Notice of Default and Acceleration with their Motion for Summary Judgment, *see* Dkt. No. 34-7 at App. 35-37. Plaintiffs respond that the October 2008 notice sent to Plaintiffs "w[as] incapable of satisfying the requirements of the Texas Property Code" because, "at the time Defendants sent the October 2008 Notice of Default and Intent to Accelerate, the Property had already been foreclosed on July 1, 2008." *See* Dkt. No. 44 at 11.

As a general matter, when a mortgagee provides a mortgage loan, the mortgagee is securing their loan agreement with collateral in the event that the mortgagor fails to pay the underlying loan agreement. If the mortgagor in fact fails to perform on the underlying loan agreement, the mortgagee, subject to some restrictions, can sell the collateral to satisfy the mortgagor's outstanding balance. Once the mortgagee forecloses and the property is sold, any amount still owed on the underlying loan agreement can be recovered through a deficiency judgment. *See generally Meecorp Capital Markets LLC v. Tex-Wave Indus. LP*, 265 F. App'x 155, 159-60 (5th Cir. 2008); Savers *Fed. Savs. & Loan Ass'n v. Reetz*, 888 F.2d 1497 (5th Cir. 1989)

The record shows that, on July 1, 2008, the Defendants sold the Property at a foreclosure sale to U.S. Bank. *See* Dkt. No. 38-1 at App. 27-29. The record also shows

that Defendants provided notice of default and acceleration to Plaintiffs in October 2008, *see* Dkt. No. 34-7, but that the Rescission of Substitute Trustee's Sale and Cancellation of Substitute Trustee's Deed was not filed until June 4, 2010, *see* Dkt. No. 38-1 at App. 30-31. Where the notice of default and acceleration was provided at a time at which the summary judgment evidence shows that foreclosure had already occurred and the Property had already been sold, the evidence shows that there is at least a genuine dispute of material fact whether the Defendants properly provided notice in accordance with Texas Property Code § 51.002(d).

The Moving Defendants' Motion for Summary Judgment on Plaintiffs' Texas Property Code claim should be denied.

II.  <u>Summary judgment should be denied on Plaintiffs' breach of contract claim.</u>

Plaintiffs allege that Defendants breached the Deed of Trust by "failing to provide the Plaintiffs with a Notice of Default and Intent to Accelerate, and a right to cure." Dkt. No. 44 at 12; Dkt. No. 38-1 at App. 23. The elements of a breach of contract claim under Texas law are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Intern., Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007).

The Moving Defendants argue that Plaintiffs' breach of contract claim "fails as a matter of law because [i]t is a well-established rule that a party to a contract who is himself in default cannot maintain a suit for its breach." Dkt. No. 34 at ¶ 22 (internal quotation marks omitted). The Moving Defendants further argue that "Plaintiffs claim

also fails because Defendants did notify Plaintiffs of the intent to accelerate the loan given the default," citing the October 2008 notice. *Id.* at ¶ 23.

To the extent that the Moving Defendants argue that Plaintiffs' claim fails because Plaintiffs were already in default, the undersigned disagrees. Plaintiffs' breach of the contract by defaulting cannot void Plaintiffs' claim of breach based on failure to provide notice of default. As explained in the Court's FCR [Dkt. No. 23] on Defendant's Motion to Dismiss [Dkt. No. 6] and adopted by Judge O'Connor, *see* Dkt. No. 27,

> the contractual terms that Plaintiff alleges were breached are terms that would come into effect if the lender claims a default and pursues acceleration, such as when, for example, the borrower fails to make payments. Put another way, the allegedly required "notices at issue presuppose that the recipient is in breach of her contractual obligations. Failure to provide the required notice is nonetheless actionable." *Gatling v. CitiMortgage, Inc.*, No. H-11-2879, 2013 WL 1625126, at *6 (S.D. Tex. Apr.15, 2013). That is because "[t]he issue is whether Plaintiff can maintain a cause of action for [Defendants'] breach of its obligations under the [Deed of Trust], even though Plaintiff did not tender full performance. It is illogical for the Court to conclude that Plaintiff cannot enforce [Defendants'] obligations, assumed to be contractual, which arise after Plaintiff's default merely because Plaintiff is in default. If that were appropriate, then the [alleged contractual notice provisions] would become practically meaningless." *Franklin v. BAC Home Loans Servicing, L.P.*, No. 3:10-cv-1174-M, 2011 WL 248445, at *2 (N.D. Tex. Jan. 26, 2011); *accord Miller v. CitiMortgage, Inc.*, No. 3:11-cv-2786-L, ___ F. Supp. 2d ___, 2013 WL 4766808, at *6 (N.D. Tex. Sept. 5, 2013).

Dkt. No. 23 at 11-12.

Further, the Moving Defendants' argument that there is no genuine dispute of material fact because notice was provided in October 2008 also fails. The summary judgment evidence, when viewed in the light most favorable to Plaintiffs, shows that the Property was sold at a foreclosure sale on July 1, 2008, *see* Dkt. No. 38-1 at App.

27-29, and that the notice of default and acceleration was given on October 3, 2008, *see* Dkt. No. 38-3 at App. 51-53, but that substitute trustee's sale was not rescinded and Substitute Trustee's Deed was not cancelled until June 4, 2010, *see* Dkt. No. 38-1 at App. 30-31. Where the notice of default and acceleration was provided at a time at which the Property had already been foreclosed and sold, the evidence shows that there is at least a genuine dispute of material fact as to whether Defendants breached the Deed of Trust's notice requirement.

The Moving Defendants' Motion for Summary Judgment should be denied as to Plaintiffs' breach of contract claim.

III.   Summary judgment should be denied in part and granted in part as to
       <u>Plaintiffs' common law fraud claim.</u>

Plaintiffs allege that Defendants falsely represented to Plaintiffs that: (1) their home was no longer in foreclosure because Plaintiffs paid the reinstatement amount; (2) Plaintiffs' home could not be foreclosed upon during the review process; and (3) Plaintiffs should disregard letters regarding a foreclosure sale because there was no sale date on the property. Dkt. No. 25 at ¶ 47. Plaintiffs plead that their common law fraud claim is based on these representation "among other things." *Id.* But, beyond the three specified representations, this general and vague catch-all statement does not meet the requirement that Plaintiffs "state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b); *accord Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (holding that "articulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent,

identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent"). And, to the extent that Plaintiffs allege additional misrepresentations in their Brief in Opposition to Defendants' Motion for Summary Judgment [Dkt. No. 44], those alleged misrepresentations were not pleaded as grounds for the common law fraud claim with the particularity that Federal Rule of Civil Procedure 9(b) requires; are not properly before the Court where they were raised for the first time in a summary judgment response; and therefore will not be considered. *See De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 F. App'x 200, 204 (5th Cir. 2012); *Cutrera v. Bd. of Sup'rs of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005).

For their part, the Moving Defendants first argue that "Plaintiffs fail to plead with particularity their fraud claim," arguing that "Plaintiffs do not identify the 'who, what, when, where and how' of Defendants alleged fraudulent conduct, nor do they identify with any particularity the circumstances surrounding Defendants' alleged fraudulent conduct" and that "[s]uch vague and conclusory statements do not satisfy the heightened pleading requirements under Rule 9(b)." Dkt. No. 34 at ¶ 25.

But the Court has already concluded that Plaintiffs have met their Rule 9(b) pleading requirements for common law fraud. And Plaintiffs' Amended Complaint contains the same allegations that the Court already found to satisfy Rule 9(b). As stated in the FCR [Dkt. No. 23] on Defendants' Motion to Dismiss [Dkt. No.6] and adopted by Judge O'Connor, *see* Dkt. No. 27,

the Moving Defendants assert that Plaintiffs "fail to specify the time or

location of the alleged fraudulent statements." Dkt. No. 6 at 19. However, the Moving Defendants overlook paragraphs 10 through 32 of Plaintiffs' Proposed FAC, which document in fairly thorough detail Plaintiffs' interactions with Defendants, including dates, names, and general locations. *See* Dkt. No. 19-1 at ¶¶ 10-32. In their Response, Plaintiffs highlight the representations they assert are fraudulent. *See* Dkt. No. 17 at 24-25. The levels of specificity differ within Plaintiffs' allegations – for some statements, Plaintiffs use the precise date, for others, only the month and year, and Plaintiffs cite employees by first and last name, first name only, department, or simply list them as a "BOA representative." But the allegations as a whole are sufficient to place Defendants on notice of the nature and grounds of Plaintiffs' fraud claim. *See Fankhauser v. Fannie Mae*, No. 4:10-cv-274, 2011 WL 1630193, at *6 (E.D. Tex. Mar. 30, 2011).

Dkt. No. 23 at 22-23.

Turning to the three pleaded bases for Plaintiffs' common law fraud claim, the Moving Defendants also assert that Plaintiffs' claim fails under the Statute of Frauds, *see* Dkt. No. 34 at ¶¶ 26-27, arguing that,

> [b]ecause the evidence shows: Plaintiffs' mortgage exceeded $50,000.00; any modification of Plaintiffs' mortgage would necessarily result in the creation, or at the very minimum an alteration, of a lien on real property; and Plaintiffs' performance, the repayment of his mortgage in full, could not occur within one year, any alleged or implied allegations of Defendants' oral representations in support of Plaintiffs' claims are barred as a matter of law.

Dkt. No. 34 at ¶ 27. Plaintiffs respond that "Defendants' argument discusses the statute of frauds as it relates to contract law," that "fraud is a tort claim based on fraudulent misrepresentations," and that Defendants therefore "have misapplied the statute of frauds." Dkt. No. 44 at 16.

Under Texas law, application of the statute of frauds bars a fraud claim to the extent that the plaintiff seeks to recover as damages the benefit of a bargain that

cannot otherwise be enforced because it fails to comply with the statute of frauds. *See Haase v. Glazner*, 62 S.W.3d 795, 799 (Tex. 2001). Application of the statute of frauds to a contract vitiates a fraud claim based on the same facts. *See Traynor v. Chase Home Finance, LLC*, No. 3:11-cv-800-K, 2013 WL 704932, at *3 (N.D. Tex. Feb. 27, 2013) (citing *Collins v. Allied Pharmacy Mgmt., Inc.*, 871 S.W.2d 929, 936 (Tex. App. – Houston [14th Dist.] 1994)). If the alleged fraudulent representations were purely promissory, a tort claim is barred by the statute of frauds; if the representations were factual, the plaintiff may seek recovery under a tort theory. *See McClure v. Duggan*, 674 F. Supp. 211, 221 (N.D. Tex. 1987).

The undersigned cannot conclude on summary judgment that Defendants' first representation – that Plaintiffs' home was no longer in foreclosure because Plaintiffs paid the reinstatement amount – is barred by the Statute of Frauds. Because the representation was allegedly made in August 2008, *see* Dkt. No. 38-1 at App. 3, a month after the July 2008 foreclosure sale, a trier of fact must first resolve whether an agreement existed between the parties at the time of the alleged fraudulent misrepresentation before a conclusion can be made that the alleged statement is barred by the Statute of Frauds.

But Plaintiffs' common law fraud claim based on the alleged representations that Plaintiffs' home could not be foreclosed upon during the review process and that Plaintiffs should disregard letters regarding a foreclosure sale because there was no sale date on the property is barred by the Statute of Frauds. Because these representations were made after the foreclosure sale was rescinded, they are subject

to the Statute of Frauds as an "agree[ment] to loan or delay repayment of money, goods, or another thing of value or to otherwise extend credit or make a financial accommodation" involving more than $50,000.00. TEX. BUS. & COM. CODE § 26.02(a)-(b); *see also Gamez v. Wells Fargo Bank, N.A.*, No. 4:11-cv-919, 2013 WL 960464, at *3 (S.D. Tex. Mar. 12, 2013). Therefore, the undersigned concludes that Defendants' Motion for Summary Judgment as to Plaintiffs' common law fraud claim based on these alleged representation should be granted.

Finally, the Moving Defendants argue that Plaintiffs' remaining common law fraud claim – based on the allegedly false representation that Plaintiffs' home was no longer in foreclosure because Plaintiffs paid the reinstatement amount – "fails under the economic loss doctrine." Dkt. No. 34 at ¶ 29. The Moving Defendants contend that "Plaintiffs fail to state a claim for common law fraud because the sole basis for liability, if any, against Defendants is contractual in nature by the terms of the Plaintiffs' promissory Note and Deed of Trust."*Id.* Plaintiffs argue that their common law fraud claim is not barred by the economic loss doctrine because "[t]he duty to use reasonable care in communicating information is independent from any contract," Dkt. No. 44 at 17, which are "personal injuries [that] are outside the subject matter of the contract and benefit-of-the-bargain damages," *Id.*

Despite the nonexistence under Texas law of a duty between a mortgage servicer and borrower, or a lender and borrower, Texas courts have held that there is always a duty to correct one's own prior false or misleading statement. *See Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 763 (N.D. Tex. 2012) (citations omitted).

Likewise, the Texas Supreme Court has approved a claim that a "bank has a duty to use reasonable care whenever it provides information to its customers or potential customers." *Federal Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).

But, even if Plaintiffs' claim is for breach of a duty imposed by law and not only created by contract, the Court, in determining whether a tort claim is merely a repackaged breach of contract claim, must also consider "whether the injury is only the economic loss to the subject of the contract itself." *Stanley Indus. Of S. Fla. V. J.C. Penny Co., Inc.*, No. 3:05-cv-2499-L, 2006 WL 2432309, at *5 (N.D. Tex. Aug. 18, 2006) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 45-47 (Tex. 1998))."The nature of the injury most often determines which duty or duties are breached. When the injury is only the economic loss to the subject of a contract itself the action sounds in contract alone." *DeLanney*, 809 S.W.2d at 495 (internal quotation marks omitted). In other words, "if 1) the claim is for breach of duty created solely by contract rather than a duty imposed by law, and 2) the injury is only the economic loss to the subject of the contract," the tort claim will be precluded. *Eastman Chem. Co. v. Niro, Inc.*, 80 F. Supp. 2d 712, 717 (S.D. Tex. 2000).

Plaintiffs argue that Defendants made false and misleading representations to them without exercising their duty to use reasonable care in communicating information and that this failure resulted in an independent injury. *See* Dkt. No. 44 at 17. Plaintiffs claim they relied on the alleged representations to their detriment, resulting in their hiring an attorney and suffering other damages, including

out-of-pocket expenses. *See* Dkt. No. 25 at 14-15. Because they seek out-of-pocket expenses incurred in reliance on the alleged representations, Plaintiffs argue that the injury alleged is over and above the economic loss to the subject matter of the Note and Deed of Trust and is sufficient to avoid dismissal.

Here, the Note and Deed of Trust do not create a duty to refrain from knowingly misrepresenting whether Plaintiffs' home was no longer in foreclosure after they paid the reinstatement amount. The duty to refrain from knowingly misrepresenting information in the manner alleged by Plaintiffs is a duty imposed by common law, independent of the duties the Note and the Deed of Trust create. This is so even though the duty to provide notices or the right to foreclose in the first place is created solely by the contract. *See Cardinal Health Solutions, Inc. v. Valley Baptist Med. Ctr.,* No. 1:07-cv-111, 2009 WL 150942, at *19 (S.D. Tex. Jan. 21, 2009). Drawing all reasonable inferences in the light most favorable to Plaintiffs, the undersigned cannot say with certainty that no genuine dispute issue of material fact exists as to whether the economic loss doctrine bars Plaintiffs's common law fraud claim based on allegations that Defendants falsely represented to Plaintiffs that Plaintiffs' home was no longer in foreclosure because Plaintiffs paid the reinstatement amount.

Accordingly, the undersigned concludes that the Defendants' Motion for Summary Judgment [Dkt. No. 34] should be denied in part and granted in part as to Plaintiffs' common law fraud claim.

IV.    Summary judgment should be denied as to Plaintiffs' request for a declaratory judgment and for an accounting.

Plaintiffs seek a declaratory judgment and an accounting as remedies. The Moving Defendants move for summary judgment on Plaintiffs' requests for declaratory judgment and an accounting because neither is an independent claim and cannot stand where all of Plaintiffs' causes of action are dismissed. *See* Dkt. No. 34 at ¶31.

Because the undersigned concludes that there is a genuine dispute of material fact as to Plaintiffs' Texas Property Code and breach of contract claims and as to one of the bases for Plaintiffs' common law fraud claim that precludes summary judgment on those claims, the Motion for Summary Judgment [Dkt. No. 34] should be denied as to Plaintiffs' requests for a declaratory judgment and an accounting.

V.    Summary judgment as to Plaintiffs' common law fraud claim against Defendant American Homes should be granted in part.

The United States Court of Appeals for the Fifth Circuit has recognized that, when one defending party establishes that the plaintiff has no cause of action, this defense generally inures also to the benefit of other similarly situated defendants. *See Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001). In this case, the Moving Defendants are entitled to summary judgment on Plaintiffs' common law fraud claim common law fraud claim based on the alleged representations that Plaintiffs' home could not be foreclosed upon during the review process and that Plaintiffs should disregard letters regarding a foreclosure sale because there was no sale date on the property. Defendant American Homes is a similarly situated defendant for purposes of this claim, and the dismissal of Plaintiffs' common law fraud claim based on these alleged representations

– insofar as that claim is even alleged against American Homes – applies equally to the non-moving, similarly situated American Homes. Accordingly, the undersigned concludes that Plaintiffs' common law fraud claim against the non-moving Defendant American Homes based on the alleged representations that Plaintiffs' home could not be foreclosed upon during the review process and that Plaintiffs should disregard letters regarding a foreclosure sale because there was no sale date on the property should be dismissed with prejudice.

## Recommendation

The Moving Defendants' Motion for Summary Judgment [Dkt. No. 34] should be granted in part and denied in part:

- Summary judgment should be granted in favor of Defendants Bank of America, N.A., U.S. Bank, N.A., and American Homes 4 Rent Properties Two, LLC as to Plaintiffs' common law fraud claim based on allegations that Defendants falsely represented to Plaintiffs that Plaintiffs' home could not be foreclosed upon during the review process and that Plaintiffs should disregard letters regarding a foreclosure sale because there was no sale date on the property, which claim should be dismissed with prejudice;

- Summary judgment should be denied as to Plaintiffs' common law fraud claim based on allegations that Defendants falsely represented to Plaintiffs that Plaintiffs' home was no longer in foreclosure because Plaintiffs paid the reinstatement amount;

- Summary judgment should be denied as to Plaintiffs' Texas Property Code

claim;

- Summary judgment should be denied as to Plaintiffs' breach of contract claim; and

- Summary judgment should be denied as to Plaintiffs' requests for declaratory judgment and for an accounting.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 1, 2014

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE